UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
KATA GREANEY,                                    )
                                                 )        Civil Action No. 14 CV 6002 (LGS)
                         Plaintiff,              )
                                                 )
        - against -                              )
                                                 )        **AMENDED COMPLAINT**
LONDON LUXURY LLC,                               )
MODEL SERVICE, LLC d/b/a                         )
MSA MODELS, FD MANAGEMENT, INC.,                 )
BED BATH & BEYOND INC.                           )
                                                 )
                         Defendants.             )
-------------------------------------------------------------X

        Plaintiff Kata Greaney ("Ms. Greaney" or "Plaintiff"), by her attorneys, Pavia &

Harcourt LLP, for her amended complaint against defendants London Luxury LLC ("London

Luxury"), Model Service LLC d/b/a MSA Models ("MSA"), FD Management, Inc. ("FD

Management"), and Bed Bath & Beyond Inc. ("Bed, Bath & Beyond") (collectively

"Defendants") alleges as follows:


                          <u>SUMMARY OF THE ACTION</u>


        1.      Without Ms. Greaney's knowledge and prior written consent, her image and

likeness appeared on the front and back of packaging for a bathrobe marketed under the

Elizabeth Arden brand.  Upon information and belief, the Elizabeth Arden brand is owned by

defendant FD Management and the robe itself was manufactured and marketed by defendant

London Luxury.  London Luxury is a long-standing and a highly valued client of MSA.  The

robe and the packaging with Ms. Greaney's image and likeness continue to be sold at defendant Bed, Bath & Beyond stores throughout the country and possibly abroad.

2.       At no time did Ms. Greaney authorize the use of her image and likeness for packaging of London Luxury's, FD Management's or Bed, Bath & Beyond's products. Ms. Greaney is typically paid upwards of hundreds of thousands of dollars for the use of her image and likeness in this manner. The Model Voucher entered into by Plaintiff, London Luxury and MSA, dated November 7, 2011 (the "Model Voucher", a copy of which is attached hereto as Exhibit A), is clear that usage of Plaintiff's image is limited to "print" only, and prohibits packaging or any other usage.

## THE PARTIES

3.       Plaintiff Kata Greaney is a citizen of New Zealand and a permanent resident of the United States of America residing in New York.

4.       Upon information and belief, London Luxury is a leading manufacturer of innovative and premium home textile products, and the exclusive, worldwide licensor of the Elizabeth Arden brand and trademarks for the bedding, bath and home spa accessories categories. Its principal place of business is in New Rochelle, New York.

5.       Defendant MSA is a model agency with offices in New York and California.

6.       Upon information and belief, defendant FD Management is the owner of the Elizabeth Arden trademark for use in connection with, among other things, women's clothing such as bathrobes and accessories with a principal place of business in Wilmington, Delaware.

7. Defendant Bed Bath & Beyond operates a chain of retail stores across the United States, and in Canada and Mexico, selling primarily home goods as well as clothing such as bathrobes and accessories. Its principal place of business is in Union, New Jersey.

## JURISDICTION AND VENUE

8. This action arises under the Trademark Act of 1946 (Lanham Act), Title 15, United States Code, and the statutory right of privacy and unfair competition. This Court therefore has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, as well as principles of pendent and supplemental jurisdiction under 28 U.S.C. § 1367.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Southern District of New York.

## FACTUAL ALLEGATIONS

10. Plaintiff Kata Greaney is a well-known and highly successful professional fashion model. Ms. Greaney's name and pictures are of great personal, pecuniary, and commercial value to her.

11. Plaintiff has appeared on the cover of Harper's Bazaar and in other such fashion magazines as Vogue, Marie Claire, Stern, and Cosmopolitan. In addition, Ms. Greaney has appeared in catalogues for such companies as Talbots, J Jill, Avon, Isetan, Triumph and Wacoal, print advertisements for Alexandre De Paris, Pierucci, Moontide, Bon Appetite, Sony, Takashimaya and Mikimoto and television commercials for Wacoal lingerie, SKII Cosmetics and Sony Mobile in Japan. Moreover, Ms. Greaney has provided her modeling services to

designers such as Prada, Catherine Malandrino, Karen Walker and Roberto Cavalli. Ms. Greaney has also provided modeling services to stores such as Intermix and Bloomingdales.

12.     Ms. Greaney has been represented by several prestigious modeling agencies during the course of her career including Images, Factor and Mc2 in the United States, Nova Models and Michael Hooker International in New Zealand, Vivian's in Australia, Image and Cosmopolitan in Japan, Why Not in Italy, and Promod in Germany.

13.     Defendant MSA holds itself out as a model agency in the business of managing and directing the careers of fashion models. MSA procures clients who employ MSA's models. MSA's office is located in the City, County and State of New York.

**Ms. Greaney, London Luxury and MSA Agree to Print Usage of Ms. Greaney's Image**

14.     In November 2011, Ms. Greaney entered into an agreement with London Luxury as her employer and with MSA for Ms. Greaney's modeling services. The terms of the agreement are contained in the MSA model voucher (the "Model Voucher"), which was signed by Ms. Greaney and London Luxury employee Judy Agata. The Model Voucher specifically limits the use of Plaintiff's images to "PRINT". The Model Voucher also states that:

> "[a]ny use of photographs taken of the undersigned model beyond the separate and specific terms of the usage agreement between MSA Models, the model [Kata Greaney] and you [London Luxury] is strictly prohibited."

15.     Ms. Greaney provided the requested modeling services at a two hour morning photo shoot at a spa in White Plains, New York on November 11, 2011 (the "Photo Shoot"). Ms. Greaney was driven to the Photo Shoot from Manhattan by London Luxury employee Judy Agata, who was present at the Photo Shoot. At no time during the trip to the spa, or during the Photo Shoot, did Judy Agata – or anyone else at the Photo Shoot – mention the shoot was for

Elizabeth Arden, or that Ms. Greaney's image would be used on the front and back of packaging in a national campaign in connection with Elizabeth Arden or Bed, Bath & Beyond.

16.     The conditions of the Photo Shoot itself gave Ms. Greaney no reason to suspect that it would result in a national campaign for a national brand: the shoot took place in a spa during a two hour period with only one photographer using a single photographer's light, no assistant and no stylist.

17.     London Luxury and MSA informed Ms. Greaney that the Photo Shoot would be limited to two hours, at a spa in White Plains, New York, and that the images taken of her would be used solely in connection with a pamphlet or brochure for the spa. The Model Voucher signed by London Luxury employee, Judy Agata, confirms that agreement.

18.     London Luxury breached the Model Voucher by using or allowing others to use photographs of Ms. Greaney taken during the Photo Shoot without her consent on the front and back of packaging in connection with a national campaign – a use beyond the "print" use allowed by the Model Voucher.

19.     MSA breached the Model Voucher by allowing others to use photographs of Ms. Greaney taken during the Photo Shoot without her consent on the front and back of packaging in connection with a national campaign – a use beyond the "print" use allowed by the Model Voucher.

20.     The use of Plaintiff's photographs as aforesaid was entirely unauthorized and without the prior written consent of Plaintiff.

### MSA and Ms. Greaney Enter Into a Management Agreement

21.     On or about February 14, 2012, MSA entered into a written agreement with Ms. Greaney, pursuant to which MSA agreed to provide Ms. Greaney advice, counsel and other

professional services (the "Management Agreement"). A copy of the Management Agreement is attached as Exhibit "B".

22.     Pursuant to the terms of the Management Agreement, among other things, MSA agreed to "advise and counsel [Ms. Greaney] regarding: (i) any and all matters regarding publicity and public relations and the general practices of the modeling, entertainment, and advertising industries" in exchange for a 20% agency fee of any and all gross monies or other consideration that Ms. Greaney receives as a result of any agreements and renewals.

## MSA Breaches the Management Agreement

23.     Without Ms. Greaney's consent, and in breach of the Management Agreement, MSA agreed with one or more of London Luxury, FD Management and Bed, Bath and Beyond that one or more of them may use photographs taken of Ms. Greaney during the Photo Shoot on the front and back of packaging in connection with a national campaign.

## MSA Fails to Advise and Counsel Ms. Greaney

24.     In further breach of the Management Agreement, at no time before or after the Photo Shoot did MSA "advise and counsel" or consult with Ms. Greaney about the fact that there was an intention or request by Defendants to use images of her taken during the Photo Shoot on the front and back of packaging in connection with a national campaign.

25.     It is standard in the model industry that for the use of an image or likeness on the front and back of packaging for a national campaign for a national brand such as Elizabeth Arden a model would be compensated at a minimum of between $20,000 and $50,000 per year.  Any additional use would be at a minimum of $75,000 or more per year.

26. Defendant MSA invoiced, collected and received a 20% commission from Plaintiff and an agency fee from London Luxury for a total of $480.00. Ms. Greaney received $320.00.

27. Pursuant to the Management Agreement, MSA had a duty to present to Ms. Greaney for her consideration all requests for the use of her image and likeness – including, but not limited to, such requests from London Luxury, FD Management and Bed, Bath & Beyond - and to provide her with competent advice and counsel about such requests. At all relevant times, MSA was aware that London Luxury, FD Management and Bed, Bath & Beyond requested to use her image and likeness taken during the Photo Shoot on the front and back of packaging in connection with national campaign for the sale of a bathrobe. MSA failed to inform Ms. Greaney of such requests.

28. Instead, with MSA's knowledge and consent, but without Ms. Greaney's knowledge and consent, Ms. Greaney's images and likeness taken during the Photo Shoot were used by London Luxury, FD Management and Bed, Bath & Beyond to commercially exploit the Elizabeth Arden brand, to sell bathrobes at Bed, Bath & Beyond stores in New York State and throughout the United States.

29. It was not until December 2013 that Ms. Greaney became aware of London Luxury's, FD Management, Inc's. and Bed Bath & Beyond's use her image and likeness taken at the Photo Shoot on the front and back of packaging in connection with a national campaign. At no time did Ms. Greaney consent to such usage.

30. MSA, London Luxury, FD Management and Bed, Bath & Beyond never paid Ms. Greaney for such usage of her image and likeness.

## MSA Breaches its Fiduciary Duties

31.     As Ms. Greaney's exclusive personal manager, MSA had a duty to make her aware of opportunities to allow her to make a well-thought out and carefully considered decision and to obtain her informed consent before allowing third parties to use her image and likeness. MSA failed to advise and counsel Ms. Greaney, and failed to obtain Ms. Greaney's consent to exploit her image and likeness on the front and back of packaging in connection with a national campaign.

32.     MSA also had a duty to secure the highest possible compensation for Ms. Greaney for the use of her image and likeness. MSA breached that duty by, among other things, allowing third parties to use her image and likeness for no fee at all or at a fee below the accepted industry standard for such usage by a model of Ms. Greaney's stature.

33.     Because of MSA's breach of duties, Plaintiff is unable to have an exclusive relationship with, and provide professional modeling services to, domestic and international clients in the cosmetic, spa and bathrobe industries.

34.     Ms. Greaney is unaware of additional use of her image and likeness by London Luxury, FD Management and Bed, Bath & Beyond in ways beyond the unauthorized usage on the front and back of packaging of the Elizabeth Arden bathrobe. Plaintiff is unaware of when such usage began and the extent of such usage of her image.

35.     By failing to advise Plaintiff of London Luxury's, FD Management's and Bed, Bath & Beyond's intent to use her image and likeness, Ms. Greaney was deprived of the ability to make an informed decision about whether to allow one or more of them to do so. Ms. Greaney has been irreparably harmed as a result in that (1) she was not compensated for the use of her image and likeness and (2) her association with the Elizabeth Arden brand will likely

foreclose opportunities to provide modeling services to other cosmetics companies and brands, in particular, Ms. Greaney would not be able to obtain an exclusive relationship with another cosmetics company or brand.

## CAUSES OF ACTION

## COUNT ONE

### Federal Unfair Competition – 15 U.S.C. § 1125(a) Against All Defendants

36.    Plaintiff repeats and realleges paragraphs 1 - 35 set forth above.

37.    The unauthorized use by Defendants of Ms. Greaney's image and likeness without Ms. Greaney's written consent is entirely unlawful and place Ms. Greaney in a false light in violation of the Lanham Act, § 43(a), 15 U.S.C. § 1125(a) although not to the exclusion of any other remedies by statute or common law.

38.    The aforesaid acts of Defendants constitute use in commerce in connection with goods or services or any container for goods, of words, terms, names, symbols, and devices, and combinations thereof, false and misleading representations of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' services, goods, or other commercial activities, with Ms. Greaney's rights in her image and likeness.

39.    The aforesaid acts of Defendants constitute use in commerce in connection with goods or services of any container for goods, of words, terms, names, symbols, and devices, and combinations thereof, false and misleading descriptions of fact and false and misleading representations of fact in commercial advertising, or promotion, which misrepresents the nature, characteristics, or qualities of Defendants' services, goods, or other commercial activities.

40.     The aforesaid acts of Defendants constitute false and misleading descriptions and representations in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

41.     The aforesaid acts of Defendants caused, and are causing, great and irreparable harm to Ms. Greaney, and unless permanently restrained by this Court, said irreparable injury will continue.

42.     As a result of the foregoing and pursuant to the statutory provisions of the Lanham Act, Ms. Greaney was damaged and is entitled to relief in an amount to be determined at trial, but no less than $150,000.

43.     Ms. Greaney is further entitled to punitive or exemplary damages, a judgment restraining Defendants from using Ms. Greaney's image in any manner whatsoever; and an award of reasonable attorneys' fees, costs and expenses incurred by Ms. Greaney in the prosecution of this action.

## COUNT TWO

### Violation of New York Civil Rights Law §§50 and 51 Against Defendants London Luxury, FD Management, Inc. and Bed, Bath & Beyond

44.     Plaintiff repeats and realleges paragraphs 1 - 43 set forth above.

45.     The New York Civil Rights Laws §§ 50 and 51 proscribe the use of an individual's name, portrait, or picture for trade or advertising purposes without the written consent of said individual. Sections 50 and 51 of the New York Civil Rights Law specify, among other things, that compensatory and punitive damages may be recoverable thereunder.

46.     The conduct alleged herein constitutes a violation of sections 50 and 51 of the New York Civil Rights Law and is punishable as a misdemeanor.

47.     As a result of the foregoing, Ms. Greaney has been damaged and is entitled to relief as set forth in the New York Civil Rights Laws, in an amount to be determined at trial, but no less than $150,000.

48.     Ms. Greaney is further entitled to punitive or exemplary damages, a judgment restraining Defendants from using Ms. Greaney's image and likeness in any manner whatsoever; and an award of reasonable attorneys' fees, costs and expenses incurred by Ms. Greaney in the prosecution of this action.

## COUNT THREE

### Breach Of Fiduciary Duty Against MSA

49.     Plaintiff repeats and realleges paragraphs 1 - 48 set forth above.

50.     MSA owed to Ms. Greaney a duty of loyalty.  By the conduct alleged above MSA breached its duty of loyalty to Ms. Greaney.

51.     MSA owed to Ms. Greaney a duty to disclose all material facts which came to its knowledge or attention.  By the conduct alleged above MSA breached its duty to disclose all material facts to Ms. Greaney.

52.     MSA owed to Ms. Greaney a duty to act with reasonable diligence in fulfilling its fiduciary obligations.  By the conduct alleged above MSA breached its duty to act with reasonable diligence.

53.     MSA was prohibited from having an interest adverse to those of Ms. Greaney in transactions with London Luxury, FD Management, Bed, Bath & Beyond or with any one or all of them.  By the conduct alleged above MSA entered into transactions prohibited by fiduciary duties owed by it to Ms. Greaney.

54.     As a result of MSA's breach of duty, Ms. Greaney has been damaged and is entitled to relief as set forth in an amount to be determined at trial, but no less than $150,000.

## COUNT FOUR

### Breach of Contract Against MSA and London Luxury (Model Voucher)

55.     Plaintiff repeats and realleges paragraphs 1 - 54 set forth above.

56.     Plaintiff entered into the Model Voucher with MSA and London Luxury whereby Plaintiff allowed the use of photographs taken of her during the Photo Shoot for "print" only. MSA and London Luxury breached the Model Voucher by using or allowing others to use photographs of Plaintiff for packaging.

57.     As a result of the conduct alleged above MSA and London Luxury breached the Model Voucher in an amount to be determined at trial, but not less than $150,000.

## COUNT FIVE

### Breach of Contract Against MSA (Management Agreement)

58.     Pursuant to the Management Agreement, MSA was to present Ms. Greaney with modeling opportunities and to provide her with advice and counsel regarding such opportunities, in exchange for which MSA took 20% of fees paid to Ms. Greaney.

59.     As a result of the conduct alleged above, MSA breached the Management Agreement and Ms. Greaney is entitled to relief as set forth in an amount to be determined at trial, but not less than $150,000.

## COUNT SIX

### Injunction Against All Defendants

60.     Plaintiff repeats and realleges paragraphs 1 - 59 set forth above.

61.     If Defendants continue to use Ms. Greaney's image without her authorization, Ms. Greaney will be irreparable damaged such that she cannot be compensated by monetary damages. Among other things, Ms. Greaney might be unable to work as a model, or her ability to earn a livelihood will be severely prejudiced, if her image becomes too closely associated with a particular brand or product.

62.     Accordingly, Ms. Greaney requests that Defendants be permanently enjoined from any future use in any fashion whatsoever of her images and likenesses obtained from the November 2011 photo shoot, including, but not limited to, the packaging of the FD Management product set forth herein.


### JURY DEMAND

63.     Plaintiff hereby demands trial by jury.


**WHEREFORE**, Plaintiff Kata Ms. Greaney requests judgment as follows:

      A.     Trial by Jury.

      B.     Judgment against Defendants as set forth in the Complaint.

      C.     Damages to be paid by Defendants in an amount to be determined at trial, but in no event less than $150,000.

      D.     An injunction preventing Defendants from any further use of Plaintiff's image, likeness or personae.

      E.     Punitive and exemplary damages to be determined at trial, but in no event less than $1 million.

F.    An award of all costs incurred prosecuting this action, including, but not limited to reasonable attorneys' fees, as set forth by statute and in the Court's discretion.

G.    And such other and further relief as this Court deems just and appropriate.

Dated: New York, New York
       September 15, 2014

PAVIA & HARCOURT LLP

By:_____
       Adam D. Mitzner (AM 8325)
       Jonathan A. Selva (JS 2006)
       William F. Fitzgerald (WF 8673)

       590 Madison Avenue, 8th Floor
       New York, NY 10022
       T: (212)980-3500
       F: (212)980-3185

       Attorneys for Plaintiff Kata Greaney

Exhibit A

570 7th Avenue I Suite 1000 I NY, NY 10018
Phone: 212-944-8896   Fax: 212-944-8899

info@msamodels.com
www.msamodels.com

# MSA MODELS

THE CLIENT IS THE EMPLOYER OF RECORD AND FULLY ACCEPTS ALL RESPONSIBILITIES FOR ANY ADDITIONAL LIABILITIES SUCH AS, BUT NOT LIMITED TO, TAXES, UNEMPLOYMENT INSURANCE AND WORKER'S COMPENSATION, THAT MAY BE DUE ON BEHALF OF THE MODEL.

| MODEL *Kata Greaney* | INVOICE TO [Employer] *LONON LUXURY* |
|---|---|
| DATE OF SERVICE *7th November 2011* | ATTENTION *JUDY AGATA* |

| RATE *200/hr.* | TIME *8* TO *10* | AMOUNT | PO NUMBER I RELEASE NUMBER |
|---|---|---|---|
| OVERTIME RATE | TIME TO | AMOUNT | MSA NOTES |

| G 5847 | **TOTAL** SUBJECT TO SERVICE FEE | FIT | PRINT ✓ | TV | SHOWROOM |
|---|---|---|---|---|---|

This voucher and your signature confirm that the undersigned model appeared for an assignment at your request. Any use of photographs taken of the undersigned model beyond the separate and special terms of the usage agreement between MSA Models, the model and you is strictly prohibited. I agree to pay the total sum noted above, plus agreed and applicable service fees, for invoices provided by model. Payment terms are Net 10. Late payments will be subject to late fees. **Full fee will be charged for all bookings cancelled within 1 business day.**

_____
MODEL SIGNATURE

_____
EMPLOYER SIGNATURE

Exhibit B

# MSA MODELS

*Kata Greaney* ("**Model**") and Model Service, LLC d.b.a MSA Models ("**MSA**") hereby agree as follows (this "**Agreement**"):

1. Model hereby engages MSA's services, and MSA accepts such engagement, to act as Model's Manager throughout the world (the "**Territory**") for the term of this Agreement in the following field(s) (check all that apply):

|  |  | Exclusive | Non-Exclusive |  |
|---|---|:---:|:---:|---|
| *KG*<br>Initial | a. | ☒ | ☐ | All areas, including all media and on camera, including, without limitation, modeling, print, live guest appearances, video, voiceovers, and film for all mediums and purposes. |
| ___<br>Initial | b. | ☐ | ☐ | Fit modeling |
| ___<br>Initial | c. | ☐ | ☐ | Fashion modeling |
| ___<br>Initial | d. | ☐ | ☐ | Lifestyle modeling |
| ___<br>Initial | e. | ☐ | ☐ | Showroom |
| ___<br>Initial | f. | ☐ | ☐ | Other: _____ |

2. MSA agrees to advise and counsel Model regarding: (i) any and all matters regarding publicity and public relations and the general practices of the modeling, entertainment, and advertising industries with respect to MSA's representation as set forth above; (ii) the proper formats for Model to present himself/herself to third parties, including aspects of makeup, hair, photo composites, and portfolio formation; and (iii) in the event that MSA serves as Model's "mother agent" (as described in Section 7 below), placements or referrals to secondary agencies in the United States or elsewhere.

3. Model hereby appoints MSA as Model's lawful Attorney-in-Fact with regard to transactions with MSA and authorizes MSA to collect and receive monies on Model's behalf, to endorse Model's name upon and deposit checks and other money transfers in MSA's account with any bank, and to retain therefrom all sums due MSA at any time. Model also authorizes MSA to approve and permit the use of Model's name, photograph, likeness, and/or voice, and sign releases for the use of same on Model's behalf. This authorization shall include the use of Model's name, photograph, likeness, and/or voice

*KG*

on all materials used by MSA to promote itself, including, without limitation, headshots, books, and electronic media (including, without limitation, materials disseminated over the internet or by CD-ROM). This power of attorney is coupled with an interest and is irrevocable during the Term (as defined in Section 3 below), and thereafter with respect to any matter for which MSA is entitled to compensation hereunder.

Model hereby assigns to MSA the proceeds of all assignments performed by Model, against which MSA has advanced payment to Model. If in accordance with MSA's voucher system, MSA does not receive payment from a client that employs Model within six (6) months of Model's completion of an assignment, Model will, upon request, promptly reimburse MSA for the sums advanced to Model by MSA in connection with such assignment. Monies owed to Model from clients or advertising agencies, including, without limitation, monies owed for cancellation fees, expenses, and foreign billings, will be paid to Model after payment is received by MSA. MSA will take all reasonable steps to collect the amounts due from clients for Model's services, and Model agrees that any claim against a client for monies owed for those services will belong to MSA, which shall remit to Model the net due to Model after deductions of MSA's entitlements (i.e., the Commission and any expenses or other monies owing to MSA hereunder). MSA will make best efforts to collect from fees and expenses from clients of Model. In the event attempts by MSA fail, MSA may, at its discretion, present Model with the option to pursue Third-Party Collection or Model's own collection. Should Model such option being presented by MSA decide to pursue Third Party Collection or Model's own collection, the risk of non-collection of fees and expenses due Model from clients and/or advertising agencies in connection with Model's vouchers, and the legal costs associated with attempts to collect such fees and expenses, shall be borne entirely by Model, and MSA agrees to waive its Commission on the fees and expenses that Model obtains as a result of Third Party Collection and Model's own collection efforts.

4.  Model agrees to seek MSA's counsel regarding all matters concerning Model's endeavors in the field of modeling. Model agrees to advise MSA of all offers of employment submitted to Model in the Territory with respect to modeling and to refer any inquiries concerning Model's services to MSA.

5.  MODEL ACKNOWLEDGES THAT MSA IS NOT, AND IS NOT LICENSED AS, AN EMPLOYMENT, THEATRICAL, OR TALENT AGENCY IN ANY JURISDICTION. MODEL FURTHER AGREES THAT MSA SHALL NOT BE REQUIRED OR EXPECTED TO OBTAIN OFFERS OF EMPLOYMENT FOR MODEL.

6.  MODEL IS AN INDEPENDENT CONTRACTOR, AND NOTHING HEREIN SHALL CREATE A PARTNERSHIP OR FIDUCIARY OR EMPLOYER/EMPLOYEE RELATIONSHIP BETWEEN MSA AND MODEL. MODEL WARRANTS THAT MODEL WILL BE WHOLLY RESPONSIBLE FOR THE PAYMENT OF ANY TAXES OWED BY MODEL TO ANY GOVERNMENT OR AGENCY, AND MODEL WILL NOT LOOK TO MSA TO PROVIDE ANY INSURANCE COVERAGE OR SATISFY ANY OF MODEL'S IMMIGRATION OBLIGATIONS.

7.  In consideration of MSA's entering into this Agreement and as compensation for the services to be rendered by MSA hereunder, Model agrees to pay MSA an amount equal to twenty percent (20%) of any and all gross monies or other consideration that Model receives as a result of any agreements (and any renewals or renegotiations thereof, including for internet usage throughout the Territory, that are entered into during the Term (as applicable, the "**Commission**"). Model further agrees to pay the

*KG*

Commission to MSA in connection with any monies that Model earns for services that Model provides to or for any third party to which Model was introduced by MSA, and for which Model provided services, during the Term, for a period of two (2) years following the expiration of the Term or other termination of this Agreement, regardless of when Model actually receives such earnings. Model hereby authorizes MSA to collect the Commission directly from any such third party in the event that Model does not make such payment to MSA. MSA, as manager, shall be entitled to receive such percentage in connection with all reuse fees, and any modifications, additions, options, extensions, renewals, substitutions for, and replacements of such engagements or contracts directly or indirectly. It is understood that substitution and replacement do not extend to include the shooting of material for a new campaign.

All television, broadcasting and firm will be processed through a union franchised talent agency and all payments for these services will be mailed to Model care of MSA. Model will pay MSA for all television and film engagements during the Term, in accordance with this Agreement, at a flat fee of 10% of the gross amount monies or other consideration that Model receives as a result of any agreements (and any renewals or renegotiations thereof). Model also understands that Model must pay an agency fee of 10% of the gross amount invoiced for such services directly to the aforementioned union franchised talent agency in accordance with regulations issued by the Screen Actors Guild (SAG).

Model also authorizes MSA to collect a ten percent (10%) "mother agency" commission from other agencies in those instances in which MSA acts as Model's mother agent. Model acknowledges and agrees that unless Model has indicated in the appropriate space on the signature page hereof that he/she already has a mother agent, MSA shall automatically become Model's mother agent.

Model agrees to pay or reimburse MSA for all out-of-pocket expenses that MSA incurs from time to time on Model's behalf, except that any single expense over One Thousand Dollars ($1,000.00) must be pre-approved by Model. A schedule of the amounts charged by MSA for certain items is annexed hereto (the items and amounts listed are subject to change from time to time).

Model hereby agrees that in the event Model refuses to fulfill her/his obligations under this Agreement, all obligations and liability, of any type, nature, or description, of MSA to Model shall cease and terminate, and in such event, MSA may, at its sole election, (i) retain as liquidated damages all funds then held and/or subsequently received by MSA on Model's behalf, or (ii) seek all legal and/or equitable remedies then available to MSA, in which event MSA shall, pending the resolution of MSA's claims, be entitled to hold the funds referred to in the preceding clause (i) as security for any judgment MSA may obtain against Model in connection with such claims.

8.  The term of this Agreement (the "**Term**") shall be for a period of three (3) years commencing as of the date hereof (the "**Initial Period**"), and it will be automatically renewed for successive one- (1-) year periods (each, an "**Additional Period**") unless and until Model or MSA gives written notice to the other of the intention to terminate by registered or certified mail at least ninety (90) days prior to the end of the Initial Period, or at least thirty (30) days prior to the end of the Additional Period, as applicable.

KG

9.  Any contracts for future usage (as such term is customarily used) of Model's modeling services, name, photograph, likeness, or voice, including for use on the internet, shall be handled by MSA and MSA shall receive its Commission in connection therewith, until the termination of such usages, regardless of the sooner expiration, termination, or modification of this Agreement.

10. Model is aware and agrees that MSA is entitled to receive a service charge from all of the clients who utilize Model's services, and that such service charge at present equals 20% of the gross monies or other consideration that Model receives from such clients as a result of agreements relating to Model's services. Model further acknowledges and agrees that (i) MSA's receipt of a service charge or fee shall be an additional inducement for MSA to act on Model's behalf, and that MSA's receipt of the service charge or fee is not, and shall not be deemed to be, a violation of any duty of loyalty or any other obligation or duty owed to Model, and (ii) MSA may collect a service charge from any such client in connection with services that Model provides to or for such third party following the expiration of the Term or other termination of this Agreement.

11. This instrument sets forth the entire agreement between Model and MSA with respect to the subject matter hereof and no modification, amendment, waiver, termination, or discharge of any provision hereof shall be binding upon the parties unless confirmed by a written instrument executed by the parties. No waiver by either party of any term or provision hereof or of any default hereunder shall affect the right of either party hereafter to enforce such term or provision, or to exercise any right or remedy in the event of any other default, whether or not similar. This Agreement shall not become effective until accepted and executed by both parties. The parties hereby represent and warrant that no statement, promise, representation, or inducement, except as herein set forth, has been made on any party's behalf, or by any of such party's employees or representatives. Should any provision of this Agreement be void or unenforceable, such provision shall be deemed severed and this Agreement with such provision severed shall remain in full force and effect to the extent permitted by law; provided, however, that in the event such severance shall materially affect MSA's right to receive compensation hereunder, MSA shall have the right to elect to treat its obligations under this Agreement as terminated. This Agreement shall inure to the benefit of the parties hereto and to their respective successors, permitted assigns, and heirs. In case of any uncertainty regarding the language of this Agreement, the language shall be construed in accordance with its fair meaning rather than interpreted against the party who caused the uncertainty to exist.

12. No breach of this Agreement by MSA shall be considered material unless within ten (10) days after Model acquires knowledge thereof or facts sufficient to put Model upon notice of any such breach, Model serves written notice thereof upon MSA and MSA fails to cure such breach within thirty (30) days after receipt of such notice.

13. Model acknowledges and agrees that Model is executing this Agreement voluntarily and without any duress or undue influence by MSA or any third party. Model further acknowledges and agrees that Model has carefully read this Agreement and has asked any questions needed to fully understand its terms, consequences, and binding effect. Model hereby acknowledges that Model has been afforded an opportunity to consult with an attorney of Model's choosing, and that Model has either consulted with such attorney or has knowingly waived such right prior to entering into this Agreement.

*KG*

14. Each party represents and warrants that such party is wholly free to enter into this Agreement and to grant the rights herein granted, and that such party is not a party to any agreements, and such party has no obligations, which conflict with any of the provisions hereof. Each party agrees to indemnify the other party against such party's breach of the foregoing representations and warranties. Model further warrants and represents that Model is at least eighteen (18) years of age, provided that if Model is not at least eighteen (18) years of age, Model understands and agrees that Model's parent or guardian must also execute this Agreement on Model's behalf.

15. Except as otherwise stated herein, any notices that are required or permitted to be given in writing under this Agreement shall be deemed given on the day such notice is delivered personally or sent via facsimile (upon the sender's receipt of a successful transmission report), or the next day after given to Federal Express or similar express courier for overnight delivery with receipt received, or five (5) days after being sent by first-class registered or certified mail, return receipt requested, and addressed to the parties at the addresses or fax numbers set forth below (as such may be changed in accordance herewith).

16. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND TO BE WHOLLY PERFORMED THEREIN, WITHOUT GIVING EFFECT TO NEW YORK'S PRINCIPLES REGARDING CONFLICTS OF LAWS AND CHOICE OF LAW. ANY CONTROVERSY OR CLAIM ARISING OUT OF OR IN RELATION TO THIS AGREEMENT OR THE VALIDITY, CONSTRUCTION, PERFORMANCE, OR BREACH THEREOF, SHALL BE RESOLVED BY ARBITRATION IN ACCORDANCE WITH THE RULES OF THE AMERICAN ARBITRATION ASSOCIATION UNDER ITS JURISDICTION IN NEW YORK, NEW YORK, BEFORE A SINGLE ARBITRATOR WITH AT LEAST TEN (10) YEARS OF EXPERIENCE IN THE MODELING INDUSTRY. THE PARTIES HERETO AGREE THAT THEY WILL ABIDE BY AND PERFORM ANY AWARD RENDERED IN ANY ARBITRATION CONDUCTED PURSUANT HERETO, THAT ANY COURT HAVING JURISDICTION THEREOF MAY ISSUE A JUDGMENT BASED UPON SUCH AWARD, AND THAT THE PREVAILING PARTY IN SUCH ARBITRATION AND/OR CONFIRMATION PROCEEDING SHALL BE ENTITLED TO RECOVER ITS REASONABLE ATTORNEYS' FEES, WITNESS COSTS, AND OTHER RELATED EXPENSES. THE ARBITRATION WILL BE HELD IN NEW YORK CITY, NEW YORK, AND ANY AWARD SHALL BE FINAL, BINDING, AND NON-APPEALABLE.

17. MSA may assign this Agreement, or any part of MSA's rights hereunder, to any person, firm, corporation, or other entity that acquires all or substantially all of MSA's assets or that is owned or controlled by MSA. Model may not assign this Agreement.

18. This Agreement may be executed via facsimile (with originals to follow promptly by mail) and in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document.

KG

ACCEPTED AND AGREED ON THIS _February 14th_, 20_12_:

MSA MODELS
570 7TH Avenue, Suite 1000
New York, NY 10018
Fax: 212-944-8899

By:_____

Name:_____

Its: _____

MODEL

_____
Model Signature

Name: _Kata Greaney_

Address: _179 Grand St 3D_

_____

Social Security #: Redacted _- 2992_

Email address: _Katagreaney@mac.com_

MODEL'S PARENT/GUARDIAN
(If Model is less than 18 years old)

_____

Name: _____

Address: _____

_____

Fax: _____

My introduction to MSA Models was arranged by:

_____

If other than MSA Models, my mother agency is:

_____

KG

## Schedule of Chargebacks

In practice, MSA will make every attempt to keep your charges to a minimum or zero. Most clients are satisfied with electronic submission. Some still require delivery of comp cards with same or next day delivery. MSA will make best efforts to notify you of charges that must be incurred to market you to the best of our abilities.

cDs booking/web/marketing portfolio: $240 per year
Comp cards $163.00 for 100
Portfolio book – scuba finish $35
If required by client:
Messenger service: $2 - $25
FedEx: $12.00 - $25.00. Extra for international

*KG*

_____
Initial

*KG*